UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DAVID B. ARTER, | ) | CASE NO. 3:09 CV 1711 |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE JAMES G. CARR |
| | ) | |
| v. | ) | |
| | ) | OPINION AND ORDER |
| MS. MALOWERY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pro se plaintiff David B. Arter filed the above-captioned action under 42 U.S.C. §§ 1983 and 1985 against North Central Correctional Institution ("NCCI") Corrections Officers Ms. Malowery and Mr. Spielman. In the complaint, plaintiff alleges he was assaulted by another inmate. He seeks monetary damages.

**Background**

Mr. Arter is currently incarcerated in NCCI, serving a 15 year to life sentence for sexual battery, gross sexual imposition, rape and attempting to use a minor in nudity materials. The victim of his crimes was a child. Mr. Arter contends he has been targeted for violence in prison because he is a sexual offender.

On October 20, 2007, Mr. Arter was attacked by another inmate while sitting inside

his cubical. He indicates he was punched in the face and in the hand. He states that although he suffered contusions to the area around his left eye, and experienced pain in his face, jaw and hand, he did not report the incident at that time. Within thirty minutes of the attack, a Columbus Dispatch newspaper article describing his criminal case was left on his desk.[1] Inmate Armbruster, who was assigned a bunk near to Mr. Arter, informed Mr. Arter that he would be required to pay for protection to avoid future assaults. The plaintiff refused to comply with the demand.

Five days later, Mr. Arter was again approached and was told he would have to pay for protection. He was standing on the basketball court when Inmate Weston approached him. The inmate informed Mr. Arter that he strongly advised paying for protection. Mr. Arter laughed at the suggestion and told the inmate he would not be bullied. Some time thereafter, a few inmates told Mr. Arter that "it was all over, and no harm was coming his way." (Compl. at 6.) Mr. Arter believed he had nothing to fear.

On October 30, 2007, Mr. Arter was attacked in his cubical by an inmate named Foley and another inmate known only by the nickname "Stompy." (Compl. at 6.) The inmates entered the cell and approached Mr. Arter. Mr. Foley punched Mr. Arter in the head, breaking his glasses and headphones. Mr. Arter pulled his chair out and positioned it between himself and Mr. Foley. He told Mr. Foley to just walk away and the incident would not be reported. Mr. Foley, however, did not relent and informed Mr. Arter that he would be killed if he did not pay for

---

[1] An article appeared in the Columbus Dispatch on October 14, 2007 entitled "Rule Breakers." The article discussed sex offenders who were employed in schools. Mr. Arter was one of the 15 former educators featured in the article which gave a brief description of the offender's age, former school and teaching job, the allegation of sexual misconduct, the outcome of the charges, the current location of the offender, the offender's response to the reported material, and the sources of the information. Jennifer Smith Richards and Jill Riepenhoff, *Rule Breakers*, COLUMBUS DISPATCH, Oct. 14, 2007, at 01A.

protection. Mr. Arter kept backing up until he was against the wall. Stompy grabbed the chair and pulled it from between Foley and Arter. At this point, both inmates began to hit Mr. Arter. He claims Ms. Malowery was in the restroom and Mr. Spielman was on the opposite side of the dormitory when the attack occurred. Officer Kipfinger responded to plaintiff's cell and stopped the attack. He was escorted to the medical department where he was treated. He was held in medical segregation for a few days. While Mr. Arter was in the medical department, two other inmates came to his cell to steal his belongings. Mr. Arter's cellmate, inmate Cousino, was attacked by these inmates and suffered injury.

Mr. Arter claims corrections officers treated him differently from other inmates because of the nature of his crime. He contends that while other inmates in the medical segregation unit were permitted to take books from the bookshelf, he was denied this privilege. He claims the officer on duty told him, "baby rapers don't get books on his shift and I had anything to do with the whole thing you would have been beaten up a lot worse." (Compl. at 8.) He further states that a female corrections officer in the "segregation cage" gave him a fifteen minute lecture on the horrible nature of child rape. She had the details of his crime incorrect, and Mr. Arter surmised that she "received this information from her drinking buddies." (Compl. at 10.)

When Mr. Arter was released to the general prison population, he was transferred to a different dormitory. Almost a year after the assaults, inmate Cousino approached Mr. Arter and informed Arter that a corrections officer had informed him that other corrections officers were paying inmates with sex, drugs, and alcohol to assault sex offenders. Mr. Arter contends this information prompted him to file a lawsuit against Inmate Foley in November 2008. In that lawsuit, he attached an affidavit from Mr. Cousino in which he indicated he had been told that two

3

unidentified corrections officers promised Foley special privileges to attack Mr. Arter. Foley did not file an answer to the complaint and a default Judgment was granted to Mr. Arter on March 16, 2009. Mr Arter now claims that Foley admitted these allegations by his silence and seeks to use this as an admission against Ms. Malowery and Mr. Spielman in this case.

Mr. Arter claims that Ms. Malowery and Mr. Spielman conspired to violate his civil rights, and subjected him to cruel and unusual punishment. He seeks $7,850,000.00 in compensatory damages, and $1,275,000.00 in punitive damages against each of the defendants.

**Analysis**

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996).

As an initial matter, Mr. Arter fails to reasonably connect Ms. Malowery and Mr. Spielman to any of the allegations set forth in the complaint. He states he was attacked in his cell and a copy of a newspaper article was placed on his desk, indicating that his attacker was aware of the nature of his crimes. He indicates he was attacked a second time because he refused to pay for

---

[2] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

protection.  Almost a year later, he was told by an inmate who claims he was told by a corrections officer that other corrections officers were provoking attacks on sexual offenders. No specific corrections officers were identified.  He claims that after he filed his lawsuit, another inmate told him he overheard Mr. Foley, talking to another unidentified person and admitting he attacked Mr. Arter.  He contends he overheard Foley say that attack would be "swept under the rug" by corrections officers.  Again, no officers were identified.  After a judgment was granted to Mr. Arter, he was approached by inmate Boman who indicated he lived in the same dorm as Mr. Arter in 2007. Boman told Mr. Arter he had knowledge that Ms. Malowery discussed Boman's and Arter's convictions with other inmates in the dorm.  He also indicated Ms. Malowery brought the newspaper into the prison that contained the story about Mr. Arter.  From this, Mr. Arter concludes that Ms. Malowery and Mr. Spielman conspired together to incite violence against sexual offenders and offered drugs, alcohol, special privileges and sex to inmates who initiated the violence.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) The pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Id.  Nor does a complaint suffice if it tenders naked assertion devoid of further factual enhancement. Id.

A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged. Id.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id.

In this case, there is very little information to connect the individuals named as defendants to the allegations in the complaint.  Mr. Arter seeks to overcome this problem by claiming that Mr. Foley admitted all of the allegations in the state court complaint when he didn't file an answer.  One of those allegations stated that Mr. Foley was prompted by corrections officers to attack Mr. Arter.  Mr. Arter seeks to use Mr. Foley's silence against Officers Malowery and Spielman.

The doctrine of issue preclusion, or collateral estoppel, dictates that once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation.  Black v. Ryder P.I.E. Nationwide, Inc., 15 F.3d 573, 582 (6th Cir.1994).  To preclude an issue from being litigated again in a subsequent suit, the issue must actually be decided by the court, and the second action must involve the same parties as the first.  King v. South Cent. Bell Tel. & Tel. Co., 790 F.2d 524 (6th Cir.1986).  Both of these criteria have not been met.  Mr. Arter was granted a default judgment so the issue of the involvement of corrections in Mr. Arter's attack was not actually decided.  In addition, Ms. Malowery and Mr. Spielman were not parties to Mr. Arter's state court action against Inmate Foley.  They did not have the opportunity to dispute the allegation.  Mr. Arter therefore cannot simply use an allegation in his complaint in state court as conclusive proof that these defendants were involved in a conspiracy to violate his civil rights.

Moreover, even if issue preclusion could be applied, the allegation in the state court complaint did not identify Ms. Malowery and Mr. Spielman. It suggested only that corrections officers may have been involved. The allegation would not suffice to tie these two defendants to the actions described in the complaint.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies pursuant to 28 U.S.C. §1915(a)(3) that an appeal from this decision could not be taken in good faith.[3]

IT IS SO ORDERED.

S/ JAMES G. CARR
CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies that it is not taken in good faith.